# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS WEIST<br>21 Longwood Drive<br>Stratford, NJ 08084 | : <br> : <br> : <br> : | CIVIL ACTION NO. _____ |
| Plaintiff, | : <br> : | **JURY TRIAL DEMANDED** |
| v. | : <br> : | |
| BENSALEM PARK MAINTENANCE,<br>LTD. d/b/a PARX CASINO<br>3001 Street Road<br>Bensalem, PA 19020 | : <br> : <br> : <br> : <br> : | |
| Defendant. | : | |

## COMPLAINT

Plaintiff Thomas Weist ("Plaintiff"), by and through his undersigned attorney, for his complaint against Defendant, Bensalem Park Maintenance, Ltd. d/b/a Parx Casino ("Defendant"), alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action to redress violations by Defendant of the Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C. § 621, *et seq*.

## JURISDICTION AND VENUE

2. On or about March 12, 2021, Plaintiff filed a Complaint with the United States Equal Employment Opportunity Commission (the "EEOC"), which was dually-filed with the Pennsylvania Human Relations Commission (the "PHRC"), thereby satisfying the requirements of 42 U.S.C. §§ 12117(a); 2000e-5(b) and (e). Plaintiff's Complaint was docketed as EEOC Case Number: 530-2021-02439. Plaintiff's Complaint was filed within one hundred and eighty (180) days of the unlawful employment practice, i.e. discrimination on account of age.

3. More than sixty (60) days have passed since Plaintiff dually-filed his Charge of Discrimination with the EEOC and the PHRC.

4. Plaintiff filed the instant matter within the relevant statutory timeline.

5. Plaintiff has therefore exhausted his administrative remedies and has complied with all conditions precedent to maintaining this action.

6. This action is authorized and instituted pursuant to the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. § 621, *et seq*.

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

8. The venue in this District is proper pursuant to 28 U.S.C. § 1391, inasmuch as the events giving rise to this action occurred in this District.

## PARTIES

9. Plaintiff Thomas Weist currently resides at 21 Longwood Drive, Stratford, NJ 08084.

10. Upon information and belief, Defendant Bensalem Park Maintenance, Ltd. d/b/a Parx Casino, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 3001 Street Road, Bensalem, PA 19020.

11. At all times relevant hereto, Defendant acted or failed to act through its agents, servants, and/or employees thereto existing, each of whom acted at all times relevant hereto in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

12. Paragraphs 1 through 11 are hereby incorporated by reference as though the same were fully set forth at length herein.

13. Plaintiff was born in 1962 and was fifty-eight (58) years old at the time of his termination.

14. On or about August 22, 2018, Plaintiff began his employment with Defendant in the position of Shift Supervisor for Facilities at Defendant's Parx Casino ("Parx") location.

15. During his employment with Defendant, Plaintiff received positive reviews on his performance and no justifiable discipline.

16. Following Defendant's change in upper management, Defendant has engaged in systemic age discrimination towards its employees.

17. By way of example, following the aforementioned change in upper management, an Administrative Assistant, who was approximately seventy (70) years of age, was laid-off rather than furloughed during the Covid 19 pandemic, and brought back for one (1) day before being terminated from employment and replaced by an individual in their 20s.

18. Beginning in or around June 2020, following Plaintiff's return from being furloughed as a result of the Covid 19 pandemic, Plaintiff began being targeted on the basis of his age by Defendant's Supervisor, Dave Esch ("Mr. Esch").

19. At the beginning of each workweek in or around June 2020, Mr. Esch would change Plaintiff's schedule without contacting Plaintiff and informing Plaintiff of the changes Mr. Esch made.

20. As a result thereof and to avoid receiving discipline for same, on or about July 6, 2020, Plaintiff spoke with Defendant's Manager and Plaintiff's Direct Report, Steve Strunk ("Mr. Strunk").

21. Additionally, Plaintiff advised Mr. Strunk of Mr. Esch's conduct towards Plaintiff and how it seemed, *inter alia*, as if Plaintiff was being targeted by Mr. Esch.

22. Mr. Strunk stated that Plaintiff should have been contacted and notified of the schedule changes and that Mr. Strunk would speak to Mr. Esch.

23. Subsequent to Mr. Strunk speaking with Mr. Esch, Plaintiff receiving an email from Mr. Esch reprimanding Plaintiff for, *inter alia*, speaking to Mr. Strunk regarding the schedule changes.

24. Shortly thereafter, on or about July 8, 2020, Plaintiff was called into Mr. Strunk's office to speak with Mr. Strunk and Mr. Esch for what Plaintiff believed would be about the discussion Plaintiff had with Mr. Strunk on or about July 6, 2020.

25. However, rather than discuss Plaintiff's aforementioned concerns, Plaintiff was informed by Mr. Esch that he wanted to discuss alleged performance deficiencies.

26. Specifically, Mr. Esch wanted to discuss why Plaintiff did not remove broken plexiglass from the facility and allegedly did not review Defendant's supply order.

27. Plaintiff informed both Mr. Esch and Mr. Strunk that, as per Defendant's policy, Plaintiff was not allowed to do physical labor work as such, as Defendant was required to have one of their union workers perform the aforementioned physical labor.

28. Furthermore, Plaintiff advised Mr. Strunk and Mr. Esch that Plaintiff did review the supply order.

29. As a result of this conversation, Mr. Esch became frustrated and exited the room.

30. Subsequently, at the conclusion of this meeting, Mr. Strunk informed Plaintiff that Plaintiff would not be receiving any disciplinary action.

31. On the following day, on or about July 9, 2020, Plaintiff spoke with Mr. Strunk to confirm that their meeting on the previous day was only a discussion, and that Plaintiff did not have anything to be concerned about.

32. Mr. Strunk confirmed that the previous day's meeting was only a discussion and that Plaintiff would not be receiving any disciplinary action.

33. Despite being told Plaintiff would not receive discipline for the above allegations, on or about July 15, 2020, Mr. Esch called Plaintiff into Mr. Strunk's office, without Mr. Strunk being present.

34. Mr. Esch proceeded to provide Plaintiff with a write-up for the same events they had previously discussed on or about July 8, 2020.

35. Mr. Esch stated that a write-up is mandatory when a CCTV security camera check is done.

36. Plaintiff asked Mr. Esch if a write-up is still mandatory if the review of the CCTV system showed no violation, to which Mr. Esch replied "yes."

37. Finding that response to be suspicious, Plaintiff told Mr. Esch that Plaintiff would like to have Mr. Strunk in the office and to speak with Mr. Strunk regarding the aforementioned write-up.

38. Upon Mr. Strunk joining this meeting, Plaintiff reminded Mr. Strunk of their previous discussion where it was concluded that Plaintiff would not receive discipline for the events they had previously discussed on or about July 8, 2020.

39. Mr. Strunk stated he was unaware of Defendant's policy of requiring write-ups when the CCTV system was reviewed.

40. In addition thereto, during this meeting, when discussing the supply order, Mr. Esch confirmed that nothing was missing from the supply order and that Plaintiff was with the supply order for approximately forty (40) minutes while putting it away.

41. Plaintiff told Mr. Strunk that Mr. Esch's allegations were without merit and unsubstantiated.

42. Again, as a result of this conversation, Mr. Esch became frustrated and exited the room.

43. Plaintiff was advised by Mr. Strunk that the write-up would be rescinded and it would instead be indicated that they had a verbal discussion.

44. Moreover, when Plaintiff brought up concerns regarding Defendant's Human Resources Department reviewing the aforementioned write-up, Mr. Strunk advised that Defendant's Human Resources Department does not get involved with Facilities issues and concerns.

45. The following day, on or about July 16, 2020, Plaintiff again spoke with Mr. Strunk regarding the outcome of the previous day's discussion.

46. Mr. Strunk stated to Plaintiff words to the effect of "look we just had a discussion, that's it."

47. Then, on or about September 8, 2020, Plaintiff received an email from Mr. Esch regarding two (2) incidents taking place on or about August 25, 2020 and September 4, 2020.

48. At no time prior to receiving this email had Plaintiff been spoken to regarding either incident.

49. Plaintiff replied to Mr. Esch that same day, on or about September 8, 2020, and at no time thereafter was Plaintiff approached to further discuss same.

50. The following day, on or about September 9, 2020, Plaintiff received an email from Mr. Esch stating "HR is asking for the signed form.  As it was agreed it was changed to a verbal warning instead of a written warning.  I will have it available when you come in tomorrow." This

email was sent despite Plaintiff working an entire shift with Mr. Esch earlier that same day without Mr. Esch mentioning that Plaintiff needed to do so.

51. Mr. Esch stated words to the effect of "HR was asking for it."

52. However, Plaintiff was not contacted by Defendant's Human Resources Department at any time after receiving the verbal warning.

53. Subsequent to receiving Mr. Esch's email, Plaintiff contacted Mr. Strunk and stated that Plaintiff would like to review the verbal warning with Human Resources and questioned whether there was merit to the document Plaintiff found on Plaintiff's desk on or about July 22, 2020.

54. Mr. Strunk advised that he would arrange a meeting with Human Resources and concluded their call.

55. Despite Mr. Strunk stating he would arrange a meeting with Defendant's Human Resources, on or about September 14, 2020, Plaintiff was abruptly terminated from employment.

56. On Plaintiff's termination paperwork, it stated that Plaintiff made threatening statements to Mr. Strunk during the phone call on or about September 9, 2020, which is an egregious fabrication of fact.

57. Plaintiff was ultimately replaced by someone substantially younger than Plaintiff.

58. As such, Defendant's reasons for Plaintiff's termination are pretextual.

59. Upon information and belief, Defendant targeted Plaintiff for termination on the basis of his age.

60. At the time of Plaintiff's unlawful discharge, he was fifty-eight (58) years of age, and therefore a member of a protected class under the ADEA.

61. It is believed and therefore averred that Defendant terminated Plaintiff's employment on the basis of his age.

62. As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, promotion benefits, earnings and earnings potential, loss of potential benefits, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to reputation.

## COUNT I
## AGE DISCRIMINATION IN EMPLOYMENT ACT
## 29 U.S.C. § 621, *et seq.*
## DISCRIMINATION

63. Paragraphs 1 through 62 are hereby incorporated by reference as though the same were fully set forth at length herein.

64. Defendant violated the ADEA in that Defendant unlawfully and illegally discriminated against Plaintiff on account of his age, being fifty-eight (58) years old at the time of the unlawful termination.

65. Defendant acted with malice and with reckless indifference to Plaintiff's civil rights and emotional and physical well-being.

66. Because of Defendant's unlawful acts, Plaintiff suffered damages in the form of, *inter alia*, loss of past and future wages and compensation, loss of reputation and standing in the professional community, personal humiliation, embarrassment, and loss of life's enjoyment.

67. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, promotion benefits, earnings and earnings potential, and loss of other significant economic benefits.

8

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant and grant the maximum relief allowed by law, including, but not limited to:

(A) Back wages, front pay, loss of health and retirement benefits, raises, and bonuses in an amount to be determined at trial, but no less than One Hundred and Fifty Thousand Dollars ($150,000.00);

(B) Liquidated damages;

(C) Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this action;

(D) Pre-judgment interest in an appropriate amount; and

(E) Such other and further relief as is just and equitable under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

        Respectfully submitted,

        **MURPHY LAW GROUP, LLC**

        By: */s/ Benjamin Salvina*
            Michael Murphy, Esquire
            Benjamin Salvina, Esquire
            Eight Penn Center, Suite 2000
            1628 John F. Kennedy Blvd.
            Philadelphia, PA 19103
            TEL: 267-273-1054
            FAX: 215-525-021
            murphy@phillyemploymentlawyer.com
            *Attorneys for Plaintiff*

Dated:   July 22, 2021

**DEMAND TO PRESERVE EVIDENCE**

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to his potential claims and his claims to damages, to any defenses to same, including, but not limited to, electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spread sheets, images, cache memory, payroll records, paystubs, time records, time sheets and any other information and/or data which may be relevant to any claim or defense in this litigation.